Opinion issued October 2, 2008












In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00253-CR






JAQUANDRIA FRANKS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 1075700






MEMORANDUM OPINION

 A jury convicted appellant, Jacquandria Franks, of recklessly causing serious
bodily injury to a child younger than fifteen, while using a deadly weapon, hot water. 
See Tex. Penal Code Ann. §§ 22.04(a)(1), (c)(1) (Vernon Supp. 2008). The jury
assessed punishment at 15 years in prison. Appellant challenges the trial court's
denial of her motion to strike certain punishment-phase testimony.

 We affirm.

 Background


 Appellant was convicted of causing her fifteen-month-old son, Z.F., serious
bodily injury by placing him in hot water. The evidence during the guilt-innocence
phase showed that appellant told her boyfriend, Damion Johnson, she was going to
bathe Z.F. around noon, before a party they were to host that evening. Johnson
testified that both he and appellant saw injuries on Z.F.'s feet, buttocks, elbows, and
hands within minutes after the bath. Appellant refused to take Z.F. to the hospital,
and Johnson later called appellant's mother to seek help. Appellant's mother called
9-1-1, and around 7:30 p.m., police officers came to appellant's house, where Officer
Stephen Kapalske saw Z.F. sitting on a couch, covered only by a towel. Officer
Kapalske saw the burns and blisters on Z.F. and noticed that appellant was ignoring
Z.F. while entertaining guests at the party. Officer Kapalske called an ambulance for
Z.F., who was taken to a nearby hospital. This was more than seven hours after the
initial injury, during which time appellant had not sought any medical care for Z.F. 
Officer Kapalske testified that appellant did not want to go to the hospital with her
son, although she eventually agreed to do so.

 Johnson, appellant's mother, and the police detective who investigated this
crime all testified that Z.F. seemed afraid of appellant. The police detective said she
saw Z.F. swat his mother's hand away, "as if to say, 'leave me alone.'" The
emergency room physician who treated Z.F. noted that he did not reach out for his
mother and observed scars on his shoulder that appeared to be adult bite marks. 
Appellant's mother, the police detective, and the emergency room physician also
testified that appellant seemed detached, indifferent, and nonchalant about Z.F. and
his injuries, which were mostly second-degree immersion burns over 12-14% of his
skin. Both the State's expert medical witness and police detective testified that the
patterns of the burns showed that Z.F. had been immersed in hot water, indicative of
child abuse. The emergency room physician also testified that she believed Z.F. had
been abused, based on his current injuries, his inappropriately calm response, the
conflicting stories appellant gave hospital staff, the lack of mother-child bonding, and
the evidence of prior injuries she saw on Z.F.

 During the punishment phase, the State introduced evidence regarding the
abuse, neglect, and murder of appellant's older child, J.F. Although Cardello
Richard, appellant's former boyfriend and Z.F.'s father, was convicted of J.F.'s
murder, the State argued that this evidence, including J.F.'s autopsy report, was
relevant to show that appellant had been negligent and abusive with J.F. 

 During the punishment phase, Detective Steven Straughter, who had
investigated J.F.'s murder, testified that appellant was not at home when Richard
murdered two-year-old J.F. by stomping on him. Dr. Dwayne Wolf, the Deputy Chief
Medical Examiner for Harris County, who performed J.F.'s autopsy, testified that, in
addition to J.F.'s fatal injuries, he found evidence of five prior rib fractures, which
would have been sustained between two weeks and two months prior to J.F.'s death.
Dr. Wolf further testified that some of the previously broken ribs were consistent with
a kick or blow to J.F.'s back and the others could be consistent with "being pushed
off . . . a ledge and falling a couple of feet." Dr. Wolf also said that J.F.'s rib
fractures would have been painful when J.F. tried to breathe or when someone tried
to pick him up.

 Anthony Steamer, Cardello Richard's brother, testified that appellant neglected
and mistreated J.F. Steamer said he saw appellant kick J.F. off a three-foot-high
porch because he was crying for food. Steamer said that appellant did not go to the
aid of her crying toddler, although another adult helped him. Steamer also saw
appellant hit J.F. on his chest, backside, and head, when J.F. was hungry or otherwise
in need. Wanda Alex, Cardello Richard's mother, also testified that appellant visited
with J.F. several times a week, and she saw appellant neglect J.F. She said, "She
[appellant] just didn't want to be bothered with him." Appellant's mother also
testified that she had been concerned about J.F.'s well-being in appellant's care,
because she believed that appellant did not properly supervise J.F. She testified that
she did not believe J.F. was being abused because "most of the time [J. F.] was with
me. He was only with [appellant] the last seven months of his life . . . ."

 At the close of punishment-phase evidence, appellant's attorney objected that
the testimony about the old wounds and the autopsy report had not been linked to
appellant and that there had been no showing that she had been negligent or abusive
with J.F. The trial overruled appellant's objection and denied her motion to strike
Dr. Wolf's testimony about J.F.'s old wounds and to strike the autopsy report. In her
sole issue on appeal, appellant contends this was error.

Standard of Review


 The admissibility of evidence at the punishment stage of a trial is controlled by
article 37.07. See Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon 2006). (1) Section
3(a) provides in pertinent part:

 [E]vidence may be offered . . . as to any matter the court deems relevant
to sentencing, including but not limited to the prior criminal record of
the defendant, his general reputation, his character, an opinion regarding
his character, the circumstances of the offense for which he is being
tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal
Evidence, any other evidence of an extraneous crime or bad act shown
beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible,
regardless of whether he has previously been charged with or finally
convicted of the crime or act.


Id. at § 3(a) (emphasis added). "A trial court's ruling as to the admissibility of
evidence under article 37.07 is reviewed under an abuse of discretion standard."
Henderson v. State, 29 S.W.3d 616, 626 (Tex. App.--Houston [1st Dist.] 2000, pet.
ref'd) (citing Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996)). 

 The trial court must make the threshold determination of admissibility of the
evidence of the bad act. Mitchell, 931 S.W.2d at 954; see Malpica v. State, 108
S.W.3d 374, 377 (Tex. App.--Tyler 2003, pet. ref'd) ("The trial court, however, must
make a threshold determination that the jury could reasonably find beyond a
reasonable doubt that the defendant committed the extraneous offense before it can
admit evidence of the extraneous offense at the punishment phase of a non-capital
trial."). "Before the jury can consider this evidence in assessing punishment, it must
be satisfied beyond a reasonable doubt that the acts are attributable to the defendant." 
Haley v. State, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005) (citing Huizar v. State,
12 S.W.3d 479, 482-83 (Tex. Crim. App. 2000)). The Court of Criminal Appeals has
held that the statutory burden of proof applies to a defendant's involvement in the act
itself, not to the elements of a crime necessary for a finding of guilt. Id.

Discussion

 Here, the State admitted the autopsy report and testimony about J.F.'s
previously broken ribs to show appellant's neglect and abuse of J.F. The State
connected this evidence to appellant through other testimony, including Steamer's
testimony that he saw appellant hit J.F. and kick him off a porch. Both Cardello
Richard's mother and appellant's mother testified that appellant neglected J.F. Taken
together, we conclude that a jury could have found beyond a reasonable doubt that
the bad acts of neglect and abuse of J.F. were attributable to appellant. See Haley,
173 S.W.3d at 515. Therefore, we hold that the trial court did not abuse its discretion
in admitting this evidence during the punishment phase of trial. See also Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon 2006). 

 We overrule appellant's sole issue.





Conclusion

 We affirm the judgment of the trial court.




 Sam Nuchia

 Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.


Do not publish. Tex. R. App. P. 47.2(b). 
1. The current version is Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 2008). Trial
was held in March 2007, before the effective date of the current version. We note however, that this
language is identical in both versions.